# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

MIL MUJERES, INC,                                    CASE NO.: 23-cv-14056-KMM

     *Plaintiff,*

v.

RUBIC, LLC and KATERYNA PANOVA,

     *Defendants.*

_____/

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, Mil Mujeres, Inc. ("Mil Mujeres"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, hereby files its Motion for a Preliminary Injunction ordering Defendants, Rubic, LLC ("Rubic") and Kateryna Panova ("Panova") (Rubic and Panova being referred to collectively as the "Defendants") to remove libelous published materials[1] regarding Mil Mujeres from the "Rubic Website" (https://rubic.us) and to remove slanderous published materials[2] regarding Mil Mujeres from Defendants' YouTube channel (https://www.youtube.com/watch?v=t8MVtrdwK8k).

---

[1] Copies of these libelous published materials are attached hereto as Exhibits A through D.

[2] A transcribed translation of Defendants' slanderous published video is attached hereto as Exhibit F, Ex. 3 to the Declaration of Emil Gilmanov.

## INTRODUCTION

> *But he that filches from me my good name robs me of that which not*
> *enriches him, and makes me poor indeed.*

William Shakespeare, Othello Act 3, Sc. 3.

A lifelong reputation can be ruined in a matter of minutes. This case is about protecting the years developed reputation of a non-profit law firm from venomous and completely unsupported claims that it is a fraud, practicing law without licensed attorneys.

The Plaintiff, Mil Mujeres, is a non-profit organization providing discounted immigration legal services to the U.S. immigrant community. Beginning in January of 2023, Defendants Rubic and Panova began an unjustifiable character assassination campaign against Mil Mujeres, publishing highly scandalous and defamatory claims about Mil Mujeres on the Rubic Website. The Defendants published at least four articles claiming that Mil Mujeres: (1) practices law with unlicensed attorneys; (2) uses fictitious and illegitimate retainer agreements; (3) is a scam; and (4) is a fraudulent charitable entity. The articles draw comparisons between Mil Mujeres and entities and individuals that Defendants claim are frauds and scams, and expressly instruct readers to avoid Mil Mujeres when seeking immigration legal services. Mil Mujeres endeavored to contact Defendants in an effort to address the defamatory publications without involving this Court, but Defendants ignored Mil Mujeres' alternative dispute resolution efforts. Then, demonstrating malice or reckless disregard for Mil Mujeres' reputation, Defendants proceeded to publish defamatory video content targeting Mil Mujeres shortly after being served with the Summons and Verified Complaint in this lawsuit.

Defendants' representations regarding Mil Mujeres are demonstrably and indisputably false and cannot be matters of legitimate opinion. As explained below, Mil Mujeres practices law with licensed attorneys, has a standard retainer agreement, and engages in no fraudulent activity.

2

But the truth of Mil Mujeres's erudite business practices can do nothing to save it from the irreparable harm the Defendants are currently causing to its reputation and relationships with its clients, prospective clients, and referral sources, without this Court issuing a preliminary injunction. Mil Mujeres therefore respectfully requests that this Court issue a preliminary injunction requiring the Defendants to remove the libelous content concerning Mil Mujeres from the Rubic Website as well as the slanderous content from Defendants' YouTube channel and other publication outlets, so that no further damage is caused to Mil Mujeres's reputation and goodwill as a result of the Defendants' false and dishonest claims.  Mil Mujeres also respectfully requests that this Court enjoin Defendants from further publication of defamatory content regarding Mil Mujeres as Defendants' action of publishing slanderous video content after being served with the Summons and Verified Complaint demonstrates that Defendants intend to continue their unjustifiable campaign to harm Mil Mujeres' reputation, goodwill, and professional relationships.

## RELEVANT BACKGROUND

*The facts contained herein are largely found in the First Amended Verified Complaint (the "Verified Complaint") [D.E. 7] and are recast here for the reader's convenience. However, additional tortious acts occurred following service of process on Defendants.*

1.      Mil Mujeres is a non-profit organization founded in 2007 to address the growing need for bilingual legal services for the immigrant community in the United States with an emphasis on helping survivors of violent crime, including domestic violence, sexual assault, and assault. [Verified Complaint, ¶7 (D.E. 7)].  Mil Mujeres has helped more than five thousand people with legal services and more than twenty thousand people with information services throughout the United States. [*Id.*, ¶8]. Many of the people Mil Mujeres helps with its direct immigration legal services come from low-income communities. [*Id.*, ¶9].

2.     Mil Mujeres endeavors to maintain an affordable fee structure for its services so it can reach more people from low income communities who are in legitimate need of immigration legal services. [*Id.*, ¶10]. Following Russia's 2022 invasion of Ukraine, Mil Mujeres began helping low income Russian-speaking migrants seeking asylum because there was a large demand for such services. [*Id.*]. Mil Mujeres provides immigration legal services though licensed Russian-speaking attorneys and paralegals and employs no less than seven licensed attorneys to carry out its charitable mission. [*Id.*, ¶11].

3.     Defendant Rubic is a limited liability company founded by Panova that publishes content to the Rubic Website (https://rubic.us), a website dedicated to immigration and life in the United States. [*Id.*, ¶12]. The Rubic Website is primarily focused on providing information to Russian speaking immigrants about immigration issues in the United States. [*Id.*].

4.     The Rubic website has a dedicated "Immigration Lawyers" page providing information about specific immigration attorneys and law firms, many of which are identified as having Russian-speaking capabilities. [*Id.*, ¶13]. The individuals and firms highlighted by Rubic on its website must pay to advertise their services. [*Id.*].

A.     RUBIC'S FIRST DEFAMATORY ARTICLE.

5.     On January 26, 2023, Defendants published an article on the Rubic website titled "Ilona Dzhamgarova, an immigration lawyer from Brooklyn, her husband, lawyer Artur Arkadyan, and their 'case writer' pleaded guilty and will go to jail." (https://rubic.us/immigratsionnyj-advokat-iz-bruklina-ilona-dzhamgarova-ee-muzh-advokat-artur-arkadyan-i-ih-pisatel-kejsov-priznali-vinu-i-otpravyatsya-v-tyurmu/) (the "First Article"). [*Id.*, ¶15]; *see also* Exhibit A.

6.     Assuming that there is any truth to the publication at all, the First Article focuses on criminal indictments of attorneys Ilona Dzhamgarova ("Dzhamgarova") and Artur Arkadyan

("Arkadyan") and their alleged fraudulent practices regarding their immigration law firm. [Verified Complaint, ¶16].

7.      The First Article issues a specific warning to its readers that charitable foundations, such as Mil Mujeres, use fraudulent schemes and should be avoided.

Right now, we need to be especially careful with "charitable foundations" that help asylum seekers on the US-Mexico border. All of them (including Bridge V USA, Teach VK, Veritas and Mil Mujeres) use fraudulent schemes (read why – read here ). The first of the "border helpers" have already been arrested with half a million dollars in cash. Others are also being watched! Cooperation with scammers always ends badly for immigrants.

[*Id.*, ¶17].

8.      Such statements about Mil Mujeres's purported use of fraudulent schemes are false. Mil Mujeres does not use fraudulent schemes in conjunction with its service. [*Id.*, ¶18].

9.      Additionally, by embedding statements about Mil Mujeres's legal services for asylum seekers in the article regarding Dzhamgarova's and Arkadyan's fraudulent acts, a false equivalence is made between the alleged fraud committed by Dzhamgarova and Arkadyan, and the services offered by Mil Mujeres. [*Id.*, ¶19].

10.     Rubic's representations that Mil Mujeres operates a fraudulent charitable organization and is a "scammer[]" is utterly false and defamatory. [*Id.*, ¶20]. Simply stated, Mil Mujeres is not engaged in any fraudulent schemes. [*Id.*].

11.     False accusations about Mil Mujeres's services, such as the Defendants' defamatory statement that Mil Mujeres uses fraudulent schemes, harms Mil Mujeres and the people Mil Mujeres seeks to help, because Russian-speaking consumers of immigration legal services are led to believe that Mil Mujeres is a fraud. [*Id.*, ¶21].

B.      RUBIC'S SECOND DEFAMATORY ARTICLE

12.     On February 2, 2023, Defendants published another article on the Rubic website (https://rubic.us/novye-moshenniki-na-granitse-ssha-s-meksikoj-fond-mil-mujeres-uzhe-

ugrozhayut-rubiku/)) – titled "New scammers on US-Mexico border: Mil Mujeres Foundation (already threatening Rubik)" (the "Second Article"). [*Id.*, ¶22]; *see* Exhibit B.

13. The Second Article contains more elaborate false and defamatory statements about Mil Mujeres. [Verified Complaint, ¶20]. The article asserts that Mil Mujeres: (a) organizes persons to serve as guarantors for a fee (not true); (b) does not practice law with licensed attorneys who can even come to court (not true); and (3) that Mil Mujeres's retainer agreement and fee is a "fiction" and a "scheme" according to other attorneys (not true). [*Id.*, ¶23].

14. These representations made by the Defendants are false. [*Id.*, ¶24]. Mil Mujeres is a legitimate immigration law firm that practices law with licensed attorneys. [*Id.*]. There is nothing even remotely illegitimate about Mil Mujeres's retainer agreement. [*Id.*].

15. The Second Article falsely refers to Mil Mujeres as a scammer in the context of providing immigration services, and asserts that Mil Mujeres and its lawyers are "fraudsters." [*Id.*].

16. The Second Article further tells the story of a potential client named Sasha[3] that ostensibly contacted a Mil Mujeres assistant. [*Id.*, ¶26]. Rubic made false and defamatory statements regarding this interaction claiming that the assistant at Mil Mujeres was the person solely responsible for handling its immigration cases and that Mil Mujeres therefore engages in the unlicensed practice of law.

> *"The situation is suspicious. Recently, many scammers have been trying to get into the field of immigration legal services. Impostors write, they offer: "I have clients - I will bring them." You need to understand that an immigration lawyer cannot work through an intermediary and payment to an intermediary - if it is not a lawyer - is also prohibited, "explains immigration lawyer Marina Shepelskaya.*

[*Id.*, ¶20].

---

[3] If Sasha is a real person, his name was changed in the article to protect his identification.

17.     The Second Article omits key information. For example, assistants, such as paralegals, are commonly and acceptably used to *assist* licensed and reputable attorneys with their practice. [*Id.*, ¶27].

18.     The Second Article falsely suggests that Mil Mujeres engages in the unlicensed practice of law. [*Id.*, ¶28].

19.     The Second Article also makes the false representation that only one person, Olga Koloditskaya, is an attorney for Mil Mujeres. [*Id.*, ¶29]. However, Mil Mujeres employs no less than seven licensed attorneys which all practice in the area of immigration. [*Id.*].

C.     RUBIC'S THIRD DEFAMATORY ARTICLE.

20.     On February 7, 2023, Defendants published yet another article on the Rubic website (https://rubic.us/vse-pobezhali-i-ya-pobezhal-bezhentsev-iz-rossii-v-ssha-vsyo-bolshe-rossiyane-ishhut-lazejki-pri-peresechenii-granitsy/) – titled "Running with obstacles. The flow of refugees from Russia to the United States is increasing at a record pace" (the "Third Article"). [*Id.*, ¶30]; *see also* Exhibit C.

21.     The Third Article states that Rubic previously wrote about "scammers" and "crooks" in the immigration legal space and provides links to the Second Article in which the Defendants published materially false and defamatory statements regarding Mil Mujeres.

The scammers charge thousands of dollars for ostensible border crossing assistance or as payment for consultations supposedly designed to make interviews with immigration officers "successful." Rubik has already written about these crooks in his articles.

[Verified Complaint, ¶31].

22.     The Third Article reinforces the false statement that Mil Mujeres somehow acts as "scammers" or "crooks" in the context of providing immigration legal services. [*Id.*, ¶32].

7

D. RUBIC'S FOURTH DEFAMATORY ARTICLE.

23.     On February 8, 2023, Defendants published another article on the Rubic website (https://rubic.us/ostorozhno-moovert-kak-ocherednye-moshenniki-shtampuyut-geniev-i-razvodyat-na-vizu-talantov-ev-1a/) – titled "Beware Moovert! How regular scammers churn out 'geniuses' and bred for the EB-1A talent visa" (the "Fourth Article"). [*Id.*, ¶33]; *see* Exhibit D.

24.     In the Fourth Article, Mil Mujeres is listed as an "impostor []" that "breed[s] with terrible force" and scams refugees on the Mexican border by promising them a "legal" path to the United States in exchange for money and guarantees. [Verified Complaint, ¶34]. The Fourth Article accuses Mil Mujeres of having no licenses to provide immigration services and engaging in fraudulent activities that could result in jail time. [*Id.*]. The Defendants imply that Mil Mujeres is among the companies and funds that actively advertise their services as immigration assistants but are actually fraudsters. [*Id.*].

25.     The Fourth Article questions the legitimacy of Mil Mujeres's services, stating that only licensed lawyers and employees of the U.S. government immigration authorities are authorized to provide immigration services. [*Id.*,¶35]. The article notes that Mil Mujeres's services are offered as "additional education services" that teach clients how to write a case, what to say, and what evidence to provide, and that Mil Mujeres only checks for errors.

> What kind of schemes immigration "helpers" of all stripes and nationalities do not come up with. Impostors specializing in pumping money out of those who want to leave for the USA breed with terrible force: **"Bridge to the USA"** , Teach BK, "Veritas", **Mil Mujeres** , etc. Having no licenses to provide immigration services, they promise refugees on the Mexican border a "legal" path to the United States, guarantors for money and guarantees. **Fraudsters, of course, face jail, as have a couple of Russians with a lot of cash who were collecting money from refugees in Tijuana** and several immigration scam lawyers have already been arrested . But while your "helpers" are being hunted by American intelligence agencies, they are emptying the pockets of hundreds of clients.

[*Id.*].

26.     This is false. Mil Mujeres attorneys draft the necessary legal documentation and attend hearings on their client's behalf. [*Id.*, ¶36].

27.     Overall, the four separate articles published by the Defendants paint a false negative picture of Mil Mujeres as an unlicensed, fraudulent company that scams refugees and offers illegitimate immigration services. [*Id.*, ¶37].

28.     Since the Defendants began publishing defamatory content regarding Mil Mujeres, Mil Mujeres received inquiries indicating that potential clients have refrained from contacting Mil Mujeres to obtain immigration legal services because of the defamatory content published on the Rubic website. [*Id.*, ¶39]. Mil Mujeres will continue to suffer lost business as long as the articles remain on Rubic's website open to the general public. [*Id.*].

29.     On or about February 8, 2023, Mil Mujeres served notice in writing on the Defendants, specifying that the articles appearing on the Rubic website are false and defamatory, and demanding that Defendants remove the false and defamatory content from the Rubic website, social media postings, and other platforms through which Defendants published the false and defamatory statements. [*Id.*, ¶40]; *see also* the emails and correspondance sent to the Defendants attached hereto as Exhibit E. To date, Defendants have not retracted their materially false statements and continue to publish same on their website. [*Id.*].

D.     RUBIC AND PANOVA DOUBLE DOWN ON THEIR DEFAMATION AFTER THEY ARE SERVED WITH THE VERIFIED COMPLAINT.

30.     On March 27, 2023, Panova and Rubic were served with the Verified Complaint. [D.E. 13 and 14].

31.     On April 6, 2023, Rubic and Panova posted to a YouTube account named RUBIC.US a video titled "Mil Mujeres fund, guarantors, asylum | New scammers at the US-

Mexico border" (https://www.youtube.com/watch?v=t8MVtrdwK8k)[5].  *See* the Declaration of Emil Gilmanov attached hereto as Exhibit F, Ex. 3.  The video reiterates, in entirety, Defendants' defamation.  *See* Gilmanov Declaration at Exhibit 3.  In the video, Panova ups the ante, doubling-down on the defamatory claims, calling Mil Mujeres "immigration fraudsters", asserting Mil Mujeres engages in illegal conduct including offering "illegal services," accusing Mil Mujeres of misleading immigrants, falsely proffering that Mil Mujeres is under investigation by the FBI, referring to Mil Mujeres as "bastards" while actively inducing consumers of immigration services to use other attorneys, and confirming that her intent with publication of the earlier articles was to deter potential clients from using Mil Mujeres's services.  *Id*.  Defendants specifically admit that the intent of their defamatory publications is to harm Mil Mujeres.  *Id.* ("…they are saying that they started getting clients coming to them who were saying that they hear that they were immigration fraudsters and that is why they didn't hire Mil Mujeres – and that is exactly what we wanted to accomplish.").  The video falsely claims that Mil Mujeres made 21 million dollars exploiting immigrants.  *Id*.  The RUBIC.US YouTube account publishes to 15.4 thousand subscribers, and Defendants' newly published defamatory video has been viewed at least 555 times to date. (*See* https://www.youtube.com/watch?v=t8MVtrdwK8k).

32.     Defendants notably advertise the services of Dmitry Paniotto, an attorney featured on the Rubic.us website, further confirming that the harmful purpose and intent of the defamatory publications is to push business to Rubic's paying advertisers while unjustifiably damaging Mil Mujeres.  *See* Gilmanov Declaration at Exhibit 3.

---

[4] The YouTube video has been circulated on Rubic's Facebook page and Telegram accounts.

[5] The YouTube video has been circulated on Rubic's Facebook page and Telegram accounts.

33.      Without intervention from this Court, Rubic and Panova will continue defaming Mil Mujeres and publishing false and defamatory material.  Defendants' tortious acts have harmed and will continue to harm Mil Mujeres.  Indeed, Defendants incredibly admit that their defamatory publications are intended to harm Mil Mujeres.  Consequently, a preliminary injunction is necessary to protect the legal rights of Mil Mujeres and to prevent further irreparable harm.

## APPLICABLE STANDARD

District courts are given wide latitude when ruling on a motion for preliminary injunction, and orders granting or denying a preliminary injunction are reviewed only for abuse of discretion. *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## ARGUMENT

Preliminary injunctions prevent irreparable harm and preserve the district court's power to render a meaningful decision after a trial on the merits. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cty. Fla.*, No. 20-CV-21084-SCOLA/TORRES, 2020 U.S. Dist. LEXIS 175990, at *11 (S.D. Fla. Sep. 23, 2020) (quotations and citations omitted). Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits. *Id.*  Mil Mujeres' predicament is appropriately addressed through the preliminary injunction procedure as, for example, Defendants' recent slanderous video makes it clear that Defendants do not intend to voluntarily cease their defamation campaign.

Under federal law, a party seeking a preliminary injunction must establish four elements: (1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury outweighs whatever damage the

injunction may cause to the defendant; and (4) that the injunction, if issued, would not be adverse to the public interest. *See Davidoff & Cie, S.A.,* 263 F.3d 1297 at 1300.

Defendants' ongoing intentional and patently false statements enable Mil Mujeres to easily prove all four elements necessary for the issuance of a preliminary injunction:

## I.  <u>First Element: Mil Mujeres is Likely to Succeed on its Libel Per Se and Libel Claims.</u>

To establish a substantial likelihood of success on the merits, a plaintiff must demonstrate a likelihood of success at trial for its *prima facie* case. *Chabad Chayil, Inc.,* No. 20-CV-21084-SCOLA/TORRES, 2020 U.S. Dist. LEXIS 175990, at *12 (citing *TracFone Wireless, Inc. v. Clear Choice Connections, Inc*., 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015). "When plaintiffs assert multiple claims as a basis for a preliminary injunction, they 'need only establish a substantial likelihood of success on one claim.'" *Boggs Contracting, Inc. v. Freismuth*, No. 6:21-cv-2088-CEM-EJK, 2021 U.S. Dist. LEXIS 252335, at *5 (M.D. Fla. Dec. 27, 2021) (citing *Freedom Med., Inc. v. Sewpersaud*, No. 6:20-cv-771-Orl-37GJK, 469 F. Supp. 3d 1269, 2020 U.S. Dist. LEXIS 109337, at *8 n.5 (M.D. Fla. June 23, 2020) (other citations omitted).

Mil Mujeres will succeed on the merits of its libel claims.

### A.  *MIL MUJERES IS LIKELY TO SUCCEED ON ITS LIBEL PER SE CLAIM (COUNT II).*

The tort of defamation is an umbrella term of the body of laws that protect people and companies from spoken and written defamation. *See Cooper v. Miami Herald Publ'g Co*., 31 So. 2d 382, 384 (Fla. 1947). Libel, in turn, is a subcategory of defamation, defined as the unprivileged written publication of a false and defamatory statement. *Id*. To recover for libel under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the plaintiff suffered damages as a result of the publication. *Thomas v. Orange Lake Country Club*, Inc., 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002) (citing *Valencia v. Citibank Int'l*, 728 So.2d 330 (Fla. 3d DCA 1999)).

*Per se* defamatory statements (libel *per se*) are "so obviously defamatory" and "damaging to one's reputation" that they "give rise to an ***absolute presumption both of malice and damage***." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014) (emphasis supplied) (citing *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (citations, alterations, and quotations omitted). A publication constitutes libel *per se* if, when considered alone without innuendo, it (a) charges that a person has committed an infamous crime or (b) tends to injure one in his trade or profession. *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014).

Here, Mil Mujeres is likely to prove at trial the *prima facie* elements of its libel *per se* claim against the Defendants since the Defendants false statements were published to their website and concern Mil Mujeres's trade and profession. Indeed, Defendants even admit that their statements are made maliciously with the intent to damage Mil Mujeres. *See* Gilmanov Declaration at Exhibit 3 ("…they are saying that they started getting clients coming to them who were saying that they hear that they were immigration fraudsters and that is why they didn't hire Mil Mujeres – and that is exactly what we wanted to accomplish.")

***First***, it is clear that the statements regarding Mil Mujeres were published to third parties. By posting the First, Second, Third, and Fourth Articles to the Rubic Website, the statements were published to all readers of the Rubic Website and the public at large. [Verified Complaint, ¶¶15, 22, 30, 33]; *see also* Exhibits A-D. If a single reader accessed the Rubic Website and read any article, then Defendants published their statements to a third-party. *See Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (holding that defamatory statements accessed on a website were publications to third parties for purposes of jurisdiction in Florida). Moreover, the

video posted by Defendants to the RUBIC.US YouTube Account was sent to 15.4 thousand subscribers, and as of April 18, 2023, had at least 555 views by third parties.

*Second*, the statements concerning Mil Mujeres are false.  Mil Mujeres practices law with seven licensed immigration attorneys. [Verified Complaint, ¶¶11, 29]. This flatly contradicts the Defendants' claims that Mil Mujeres practices law without a license. [*Id.*, ¶28]. Further, nothing about Mil Mujeres's retainer agreement is a "fiction." [*Id.*, ¶¶23-24]. Statements in the Second Article that Mil Mujeres unlawfully organizes people to serve as guarantors are likewise false since Mil Mujeres does not engage in such practices. [Verified Complaint, ¶23]; Exhibit B. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1252 (S.D. Fla. 2014) (holding defendants statements that plaintiff was convicted of a crime when he was not was false for defamation purposes). Similarly, Defendants falsely contend in their video that Mil Mujeres engages in illegal activity and is under investigation by the FBI, yet there is absolutely no legitimate factual information lending a shred of truth to these malicious defamatory contentions.  *See* Gilmanov Declaration at Exhibit 3.

Most importantly, nothing about Mil Mujeres's operation justifies labeling it as a "scam" or "fraud." [Verified Complaint, ¶¶25, 31, 32, 33, 34, 17, 19, 34]. Defendants' negative representations, absent any objective evidence, are simply false. Defendants must present evidence that Mil Mujeres somehow commits fraudulent acts or scams, but no such evidence exists.

*Third*, since the statements made by the Defendants tend to injure Mil Mujeres's trade or profession, intent is presumed. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014). But even if negligence[6] needed to be shown, the evidence demonstrates that

---

[6] The elements of negligence are (1) duty; (2) breach; (3) causation; and (4) damages. *See Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 27 (Fla. 2d DCA 2011). Defendants in this case owed a duty of reasonable care to the Plaintiff to not publish false and defamatory statements since by

Defendants were more than negligent in publishing the statements about Mil Mujeres in the aforementioned articles. Defendants could easily discover that Mil Mujeres practices law with licensed attorneys by simply reviewing the attorneys listed on Mil Mujeres's website and researching their licensure. Defendants did not do so. Statements about Mil Mujeres arranging for guarantors should have also been verified. It was at least negligent to publish false statements concerning alleged arrangement of guarantors without any actual evidence. Finally, Defendants admit that their defamatory statements, including contentions that Mil Mujeres is a fraud and a scam, were made with malicious intent. *See* Gilmanov Declaration at Exhibit 3 ("…they are saying that they started getting clients coming to them who were saying that they hear that they were immigration fraudsters and that is why they didn't hire Mil Mujeres – and that is exactly what we wanted to accomplish."). Given this admission, Defendants' defamatory statements must be construed by a judge or jury as made with malicious intent. The fact that Defendants admit their malicious intent after being served with process in this case evidences the necessity of a preliminary injunction.

> **Fourth**, Defendants' false statements injure Mil Mujeres in its trade or profession, thereby also making damages presumed. *Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV-SEITZ/SIMONTON, 2011 U.S. Dist. LEXIS 96939, at *21-22 (S.D. Fla. Aug. 30, 2011) ("However, in a libel per se action, special damages need not be shown to sustain the action because malice is presented as a matter of law in such cases") (citing *Johnson v. Finance Acceptance Co*., 118 Fla. 397, 400-01, 159 So. 364 (Fla. 1935)). Regardless, Mil Mujeres has

---

publishing such statements they created a foreseeable zone of risk that such statements, if false, could injure Mil Mujeres. *Id*. (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992). Defendants breached their duty of care by failing to use reasonable care in making their false statements by not verifying the truth of their statements. Defendants breach proximately caused Mil Mujeres damages to its reputation, goodwill, and ability to acquire customers.

suffered substantial damages, just as Defendants intended, with Mil Mujeres's reputation and goodwill being tarnished. For example, as the Second Article asserts, Sasha, a potential client of Mil Mujeres, declined to retain Mil Mujeres as legal counsel specifically because of the libelous comments made by Defendants. Sasha is likely one of many potential clients who avoided Mil Mujeres because of Defendants' libelous statements. The false statements thus harm Mil Mujeres's reputation and goodwill, depriving it of potential clients, just as Defendants admittedly intend.

      B.     *MIL MUJERES WILL SUCCEED ON ITS LIBEL CLAIM (COUNT I)*

Libel requires proof of: (1) publication; (2) falsity; (3) an actor acting with knowledge or reckless disregard as to falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) a defamatory statement. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *see also Fun Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1197 (M.D. Fla. 2002).

Similar to the analysis regarding Count II, Defendants' false statements regarding Mil Mujeres are libelous. ***First***, the articles were published to third parties when Defendants posted articles on the Rubic Website which is available and accessible to the public. *See Internet Sols. Corp.*, 39 So. 3d 1201 at 1203. ***Second***, the statements are false. As explained *supra*, Mil Mujeres does not practice unlicensed law, unlawfully arrange for guarantors, and is not a scam or fraud.

***Third***, a jury will likely find that Defendants' false statements were made with malicious, or at least negligent, intent. To make such inflammatory statements about Mil Mujeres without verifying the truth of those statements by any means is negligent.[7] Even after being notified of the falsity of their statements, Defendants did not take corrective action and instead continued publication of false statements to the third party public. Defendants even admit their malicious

---

[7] *See* negligence analysis *supra* in note 2.

intent to harm Mil Mujeres.  Defendants' deliberate statements show malicious intent to harm Mil Mujeres. *See  In Collier Cty. Publ'g Co. v. Chapman*, 318 So. 2d 492, 494 (Fla. 2d DCA 1975) ("Deliberately false statements satisfy the highest scienter requirements, *i.e.* malice").

**Fourth**, Mil Mujeres has suffered actual damages as a result of the Defendants' misconduct. *See Bentley Motors Ltd. Corp.,* 899 F. Supp. 2d 1291 at 1302 (holding that loss of trade, loss of goodwill, and confusion is a damage). A prime example is Sasha, a potential client that the Defendants' induced into declining Mil Mujeres' services turned away from the publication of their articles. Sasha likely represents other potential customers who, after reading the false publications on the Rubic Website, turned away from seeking services from Mil Mujeres. Mil Mujeres likewise has suffered a loss of reputation and goodwill by having its credibility besmirched by the Defendants in the articles.

**Last**, the statements are defamatory. The false statements cast Mil Mujeres as a scam organization that should not be trusted. *Klayman*, 22 F. Supp. 3d 1240 at 1249-50 (holding that "defamatory" means, essentially, negative associations). These negative associations are the definition of defamatory. No reasonable person would choose to trust Mil Mujeres after reading the statements made by the Defendants unless they somehow knew the statements were false. The Defendants' negative misrepresentations of Mil Mujeres's business practices are defamatory.

## II.   Second Element: Mil Mujeres will Suffer Irreparable Harm if Injunctive Relief is not Granted.

In order to obtain the equitable remedy of an injunction, a plaintiff must establish that they will suffer irreparable harm, *i.e.*, that there is no adequate remedy at law. *See Reynolds v. Roberts*, 207 F.3d 1288, 1299 (11th Cir. 2000) ("A court enters a preliminary injunction to prevent the plaintiff from being injured, and where there is no adequate remedy at law.") (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)).

Without a preliminary injunction being issued in this case, Mil Mujeres will suffer irreparable harm to its goodwill, reputation, and customers. This Court has held that the loss of customers and goodwill is an irreparable harm. *See Fortiline, Inc. v. Moody*, No. 12-CV-81271-RYSKAMP, 2013 U.S. Dist. LEXIS 200015, at *14 (S.D. Fla. Jan. 3, 2013) ("The loss of customers and goodwill is an irreparable injury for which there is no adequate remedy at law"); *See also Badia Spices, Inc. v. Gel Spice Co*., No. 15-CV-24391-COOKE/LOUIS, 2019 U.S. Dist. LEXIS 113626, at *11 (S.D. Fla. July 8, 2019) (citing *Ty, Inc. v. Jones Group, Inc*., 237 F.3d 891, 902 (7th Cir. 2001) ("damages caused by trademark infringement are irreparable and not rightfully compensated by monetary damages because it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill) (quotations omitted); *Bentley Motors Ltd. Corp. v. McEntegart*, 899 F. Supp. 2d 1291, 1302 (M.D. Fla. 2012) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion"). Defendants admit that their publications caused at least one identifiable prospective client – Sasha – to avoid Mil Mujeres' services. *See* Exhibit B. This indisputably demonstrates harm to Mil Mujeres' goodwill, reputation, and ability to legitimately service clientele.

The Defendant's libelous comments already have and will continue to cause irreparable injury to Mil Mujeres if they are not swiftly removed from the public domain. Mil Mujeres's reputation, goodwill, and customers (such as Sasha) are compromised with the continued publication of the Defendants libelous comments.

### III.     Third Element: The Threatened Injury to the Defendants does not Outweigh the Damage the Injunction may Cause.

In granting a preliminary injunction, virtually no damage will befall the Defendants. By requiring the Defendants to remove the four articles from their website, the Defendants will suffer

insignificant damages to their advertising revenue for the four articles. Further, there can be no claimed hardship suffered by the Defendants in removing defamatory content. Ironically, removing the defamatory content will actually work the opposite of hardship to the Defendants given, for example, that Defendants will be removing content from their immigration-focused website thus cleansing the website of material that deceives actual and prospective consumers of immigration services.

Any hardship from an injunction preventing the Defendants from publishing defamatory content is the natural consequence of the Defendants' unjustified publication of such content in the first place and the Defendants' loss incurred in removing a mere four articles plus several videos is trivial when compared to the vast amount of additional content that Defendants publish to their website, YouTube channel, and other media outlets.

**IV.    Fourth Element: An Injunction would Serve the Public Interest.**

A preliminary injunction would serve the public interest by allowing the public to obtain discounted legal services from Mil Mujeres, which the public is currently avoiding due to the Defendants' false statements. Further, the public interest is always served when injunctive relief results in the avoidance of unnecessary confusion. *See Angel Flight of Georgia, Inc. v. Angel Flight Am.*, 522 F.3d 1200, 1209 (11th Cir. 2008). Here, an injunction would cause publication of false information to cease and therefore avoid unnecessary confusion as a simple matter of logic.

There is no public benefit to allowing the continued publication of the Defendants' facially defamatory statements which are confusing the public as to the legitimacy of Mil Mujeres's business. The public has every interest in the restoration of Mil Mujeres's business reputation since it is a non-profit company dedicated to serving its community, which can only be achieved with the issuance of a preliminary injunction.

V.      **Security.**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of a bond or security should be small since the damages that would occur to the Defendants if a mere handful of false articles and videos were removed from a website, a YouTube channel, and other platforms on which Defendants publish tremendous amounts of other material would be insignificant. Mil Mujeres intends to post any bond this Court may deem just and reasonable.  However, Mil Mujeres respectfully stresses that it is a non-profit and that the defamatory publications of Defendants are demonstrably and indisputably false.  Consequently, a bond, if any, should be minimal.

WHEREFORE, Plaintiff Mil Mujeres respectfully requests that this Court enter a preliminary injunction ordering the Defendants to remove the articles concerning Mil Mujeres from the Rubic Website and other platforms where Defendants published the articles.  Mil Mujeres also requests that the preliminary injunction mandates that the Defendants remove the videos concerning Mil Mujeres from Defendants' YouTube channel and other platforms where Defendants published the articles. Finally, Mil Mujeres respectfully requests entry of an order enjoining Defendants from publishing further defamatory material similar to the articles and videos currently at issue in this litigation.

20

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiff*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
E-Service: ftlemaildesig@lewisbrisbois.com

By: *s/ David M. Robbins* _____
      David M. Robbins
      Florida Bar No. 1012340
      david.robbins@lewisbrisbois.com
      aviva.pasternak@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2023, a true and correct copy of the foregoing was filed via the CM/ECF system, which will serve a true and correct copy of the same to all attorneys of record.

**Mandic Law Group, PA**
Tamara Milosevic, Esq.
2924 Collins Ave, Suite 301
Miami Beach, FL 33140
Tel. No.: 305-904-9943
Email address: tamara@mandiclawgroup.com

*s/ David M. Robbins*
David M. Robbins