UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-14056-Moore/McCabe

MIL MUJERES, INC.

 Plaintiff,

v.

RUBIC, LLC and
KATERYNA PANOVA,

 Defendants.
_____/

**REPORT AND RECOMMENDATION ON DE 18**

This is an internet defamation case. Plaintiff has filed a Motion for a Preliminary Injunction ("Motion") (DE 18), seeking to compel Defendants to remove certain allegedly defamatory materials from the internet and to enjoin Defendants from publishing defamatory materials in the future. United States District Judge K. Michael Moore has referred the Motion to the undersigned for a Report and Recommendation (DE 20). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion (DE 18) be **DENIED**.

**I. FINDINGS OF FACT**

The Court held an evidentiary hearing on this Motion on May 18, 2023 (DE 37). Based on the evidence received and considered, the Court makes the following findings of fact.[1]

 1. Plaintiff Mil Mujeres, Inc. is a non-profit 501(c)(3) entity that provides bilingual legal services to immigrants in the United States who are survivors of violent crime, including

---

[1] In making factual findings, the Court cites to documentary evidence admitted during the hearing and relevant portions of the record. The factual findings are also based upon or supplemented by the testimony as recalled by the Court, as the testimony has not been formally transcribed and made part of the record.

domestic violence and sexual assault (DE 7 ¶ 7).  In 2022, in light of the Russia-Ukraine war, Mil Mujeres, Inc. extended its services to assisting low-income Russian speaking refugees in seeking asylum to enter the United States (DE 7 ¶ 10).

2. Mil Mujeres, Inc. operates in conjunction with another entity, Mil Mujeres Legal Services.  According to its Executive Director, Mil Mujeres Legal Services "consists" of seven licensed attorneys (DE 43-7 ¶ 9).  The evidence did not clarify whether these attorneys work as employees, or as independent contractors, or merely as attorneys in referral relationships with one another.  Only one of the seven attorneys listed "Mil Mujeres Legal Services" as her employer in official bar licensing records introduced into evidence (DE 43-7 at 10).

3. Likewise, the evidence did not clarify the legal relationship between Mil Mujeres Legal Services and Mil Mujeres, Inc.  The Court finds such clarification unnecessary to resolve this Motion.  For purposes of this Report and Recommendation, both entities will be referred to collectively and interchangeably as "Mil Mujeres."

4. Defendant Kateryna Panova is a Russian speaking journalist who owns and operates Co-Defendant Rubic, Inc. ("Rubic").  Rubic, in turn, operates a website and social media platform dedicated to helping Russian speaking immigrants seek asylum and migrate to the United States.  The Rubic platform includes a website with numerous published articles and links to YouTube videos.  Rubic has a viewership of approximately two million.

### Ianina Shuvalova

5. In or around January 2023, a Russian speaking woman named Ianina Shuvalova found herself at the United States-Mexico border seeking entry into the United States.  Shuvalova, who testified at the hearing on this Motion via Zoom, sought to enter the United States by finding a "sponsor."

6.      The parties did not introduce evidence to explain the procedures by which immigrants can enter the United States with a sponsor. Pursuant to Federal Rule of Civil Procedure 201, however, the Court takes judicial notice that the United States Citizenship and Immigration Services ("USCIS") offers online warnings about persons who offer to become a sponsor in exchange for a fee:

> Misleading Offers of Support
>
> Look out for individuals who attempt to contact you online or through your social media accounts to offer to be your supporter or connect you to a supporter in exchange for your information, a fee, or other form of compensation. Supporters should be able to provide financial support to beneficiaries for up to a 2-year period of parole. Beneficiaries are not obligated to repay, reimburse, work for, serve, marry, or otherwise compensate their supporter in exchange for the potential supporter submitting Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, on their behalf or for providing financial support while they are in the United States. Find more information on potential exploitation and abuse in the Understand Your Rights (PDF) guide.

*See Common Scams-Misleading Offers of Support*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/scams-fraud-and-misconduct/avoid-scams/common-scams (last visited May 31, 2023).[2]

7.      At some point, Shuvalova posted an ad on Facebook looking for a United States sponsor. A third-party named "Gregory" put her in contact with Natalya Mihhailova, who works as a paralegal for Mil Mujeres (hereafter "Paralegal"). On January 17, 2023, Shuvalova had the following exchange with Paralegal via the Telegram app (the original exchange took place in Russian, and the parties introduced translations into evidence):

| Paralegal | Shuvalova |
|---|---|
|  | Good day. Gregory shared your contacts with me. I need a sponsor |

---

[2] To the extent the parties wish to object to judicial notice, they may do so set forth in Section III of this Report and Recommendation. *See Paez v. Sec. Fla. Dep't of Corrs.*, 947 F.3d 649, 651-53 (11th Cir. 2020) (no error for court to take judicial notice where parties received notice and opportunity to be heard via objections to Magistrate Judge's Report and Recommendation).

| | |
|---|---|
| Hello. Can we jump on a call? | |
| | Yes. |

(DE 29-1 at 1).

8.      Thereafter, Paralegal spoke with Shuvalova and offered to provide a United States sponsor to her for $800, as well as a free consultation with Mil Mujeres attorney Gary Royle. Shuvalova agreed to the free consultation, which took place on January 18, 2023.

9.      Following the consultation, Paralegal sent Shuvalova a proposed retainer agreement for legal services with Mil Mujeres, calling for a legal fee of $6,000. Shuvalova testified that the $6,000 fee did not include the $800 sponsor fee. Shuvalova did not sign the contract, nor did she pay the $6,000 fee or the $800 sponsor fee.

10.     Later, Paralegal sent Shuvalova a message via Telegram, and the following exchange took place (again all in Russian):

| **Paralegal** | **Shuvalova** |
|---|---|
| Did you find a sponsor? You ended up not contacting us for the sponsor. | |
| | I found a free one. Yours is very expensive. |
| I did not offer you any sponsors. On the contrary, I said we are not doing this. You must have confused me with someone else. But that's fine. It happens. You must be stressed out now, having to hide your child from immobilization in Mexico. I can understand you [laughing / crying emoji]. | |
| | Your text is very disgusting. |

(DE 29-1 at 3).

## The Rubic Articles

11.     Following these events, Rubic published four articles on its website that referred to Mil Mujeres. Rubic published all of its articles in Russian, and the parties introduced translated versions into evidence.

4

12. First, on January 26, 2023, Rubic published an article (hereafter "Article 1"), titled "Illona Dzhamgarova, an Immigration Lawyer from Brooklyn, Her Husband, Lawyer Artur Arkdyan, and Their 'Case Writer' Pleaded Guilty And Will Go To Jail" (DE 43-2). Article 1 dealt mainly with a lawyer from Brooklyn, but it referred to Mil Mujeres in one sentence:

> Right now, we need to be especially careful with charitable foundations that help asylum seekers on the US-Mexico border. All of them (*including ... Mil Mujeres) use fraudulent schemes (read why-read here).*

(DE 43-2 at 6) (emphasis added).

13. The second article, published on February 2, 2023 (hereafter "Article 2"), dealt extensively with Mil Mujeres (DE 43-3). Article 2, titled "New Scammers on US-Mexico Border: Mil Mujeres Foundation (already threatening Rubik)," told the story of "Sasha," a real-life refugee whose name was changed in the article to protect anonymity (DE 43-3).

14. Article 2 discussed "Sasha's" situation at the Mexico border and claimed that Mil Mujeres' had offered to find a sponsor for "Sasha" for $800, as well as offering to provide legal services for $6,000. The article included a screenshot of portions of a Mil Mujeres retainer agreement as well as Telegram messages between a Mil Mujeres employee and "Sasha." Article 2 claimed that Mil Mujeres' conduct amounted to a "fraud" and a "scam" (DE 43-3 at 1, 4-6).

15. The author of Article 2 also claimed to review the Mil Mujeres' website. Article 2 made the following statement about the number of attorneys listed on the Mil Mujeres website:

> On the site we do not see Natalya Mikhailova [Paralegal], whom we know by correspondence (as she said in a conversation with Rubic, she works as an "assistant to the lawyer"). *But out of 7 employees, only one employee named Olga Koloditskaya, presumably, is a lawyer.*

(DE 43-3 at 5-6) (emphasis added).

16. The plight of "Sasha" depicted in Article 2 seemed to mirror the plight of Shuvalova. Nevertheless, Shuvalova testified that she is not "Sasha." Panova testified that Rubic had multiple confidential sources for Article 2.

17. On February 7, 2023, Rubic published a third article (hereafter "Article 3"), titled "Running with Obstacles. The Flow of Refugees from Russia to the United States is Increasing at a Record Pace" (DE 43-4). Article 3 did not expressly mention Mil Mujeres, but did contain the following two sentences:

> The scammers charge thousands of dollars for extensible border crossing assistance or as payment for consultation supposedly designed to make interviews with immigration officers "successful." Rubic has already written about these crooks in his articles.

(DE 43-4 at 2). The second sentence included a link to Article 2, which dealt extensively with Mil Mujeres (DE 7 ¶ 31).

18. Finally, on February 8, 2023, Rubic published a fourth article (hereafter "Article 4"), titled "Beware Moovert! How Regular Scammers Churn Out Geniuses and Bred for the EB-1A Talent Visa" (DE 43-5). Article 4 mentioned Mil Mujeres in only one sentence, claiming that Mil Mujeres had "no licenses to provide Immigration Services…." (DE 43-5 at 1).

### YouTube Video

19. As a result of these articles, on or about February 8, 2023, counsel for Mil Mujeres sent a letter to Defendants Panova and Rubic (DE 43-9). The letter accused Defendants of committing defamation, and it threatened litigation unless Rubic made a retraction (DE 43-9).

20. Defendants made no retraction. As such, on March 2, 2023, Mil Mujeres filed the instant suit (DE 1). An Amended Complaint followed on March 8, 2023 (DE 7).

21. Thereafter, on April 6, 2023, Panova posted a YouTube video on the Rubic platform in Russian. The parties introduced a translation of the video into the record (DE 43-6).

In the video, Panova claimed that Mil Mujeres was "illegally offering legal help" at the Mexico border by offering "to locate sponsors for money," and that "Mil Mujeres are non-profit fraudsters" (DE 43-6 at 22-25).

22.     This Motion followed.

## II.    DISCUSSION

A party seeking a preliminary injunction under Federal Rule of Civil Procedure 65 must demonstrate four factors: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (cleaned up).

The Court will address each factor in turn.

### A.    Likelihood of Success on the Merits

The Amended Complaint alleges four counts: (1) defamation/libel, (2) defamation/libel per se, (3) defamation/libel by implication, and (4) tortious interference with a prospective business relationship (DE 7). When plaintiffs assert multiple claims as a basis for a preliminary injunction, they need only show a substantial likelihood of success on one claim to satisfy Rule 65. *See, e.g.*, *Boggs Contracting, Inc. v. Freismuth*, No. 6:21-cv-2088-CEM-EJK, 2021 WL 6755466, at *2 (M.D. Fla. Dec. 27, 2021).

After careful review of the evidence adduced at the hearing, the Court finds Mil Mujeres has shown a substantial likelihood of success on a portion of one of the claims alleged in the Amended Complaint, namely, Count 1 for libel/defamation. Specifically, Article 4 claimed that Mil Mujeres had "no licenses to provide Immigration Services…." (DE 18-4 at 2). The evidence showed this statement to be false. As such, the Court finds Mil Mujeres substantially likely to prevail on this portion of Count 1. *See Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999) (setting forth the elements of defamation).

The Court does not reach this conclusion as to the remainder of Count 1, or as to any other count. As to all counts premised on the allegedly defamatory statements that Mil Mujeres engaged in "fraudulent schemes" or "scams," Shuvalova testified that Mil Mujeres offered to find a United States sponsor in exchange for a fee – conduct that has been the subject of USCIS warnings. Although Mil Mujeres argued that its conduct was completely legal, Mil Mujeres failed to develop the record or provide the Court with legal authority for that contention. At the conclusion of the hearing, the Court was left with far more questions than answers as to the contours of the refugee sponsor program, the scope of services that Mil Mujeres sought to provide, and whether such services were legal or illegal. As a result, the Court reaches no conclusions whatsoever on these issues, except that Mil Mujeres failed to carry the heavy burden necessary to show a substantial likelihood of success on the merits of these issues for purposes of Rule 65.

**B.     Irreparable Harm**

Mil Mujeres must next show irreparable harm. As a general rule, "injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Moreover, when plaintiffs seek a Rule 65 injunction to enjoin speech in a defamation case, they face an added

burden because prior restraints of speech are disfavored under the law. *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1270 (S.D. Fla. 2013) (noting the "well-settled rule prohibiting injunctive relief in defamation cases"); *Dolen v. Ryals*, No. 8:09-cv-2120-T-23AEP, 2010 WL 2079657, at *1 (M.D. Fla. May 24, 2010) (adhering to the majority view that absent extraordinary circumstances injunctions should not issue in defamation cases); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013) (noting that "[a] temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns").

After careful review of the evidence adduced at the hearing, the Court finds that Mil Mujeres has not shown irreparable harm sufficient to justify an injunction that would restrain Defendants' speech. Should it prevail in this case, Mil Mujeres has an adequate remedy at law in the form of money damages.

The Court has considered, but finds unpersuasive, the cases cited by Mils Mujeres in support of irreparable harm (DE 18 at 18). *See Fortline, Inc. v. Moody*, No. 12-cv-81271, 2013 WL 12101142, at *2 (S.D. Fla. Jan. 7, 2013) (issuing injunction on claims of misappropriation of trade secrets and tortious interference with business relationships); *Badia Spices, Inc. v. Gel Spice Co., Inc.*, No. 15-cv-24391, 2019 WL 4694140, at *2 (S.D. Fla. July 8, 2019), *R. & R. adopted*, 2019 WL 7344818 (S.D. Fla. Sept. 27, 2019) (finding irreparable harm where defendant willfully infringed on plaintiff's trademark); *Bentley Motors Ltd. Corp. v. McEntegart*, 899 F. Supp. 2d 1291, 1302-03 (M.D. Fla. 2012) (finding irreparable harm in trademark and trade dress infringement action). The Court finds these cases distinguishable because they did not involve defamation actions, nor did they involve preliminary injunctions that would have resulted in restraints of speech.

The Court has also considered the limited exception to the general rule against injunctions in defamation cases where "the allegedly defamatory statements constitute or are incidental to conduct that constitutes intentional interference with a potentially advantageous business relationship." *See Murtagh v. Hurley*, 40 So. 3d 62, 66-67 (Fla. 2d DCA 2010). The Court finds this exception does not apply because the allegedly defamatory statements at issue here were not "incidental" to the tortious interference conduct alleged in Count 4 of the Amended Complaint. To the contrary, the reverse is true, with Count 4 being incidental to the core defamation conduct alleged in Counts 1, 2, and 3. For all of these reasons, the Court finds no irreparable harm for purposes of Rule 65.

## C. Balance of Harms

Mil Mujeres must next show that the balance of harms favors entry of a preliminary injunction. The Court finds Mil Mujeres has not met this burden. If the Court wrongly enters a preliminary injunction, Defendants will suffer harm in the form of a prior restraint on their right to free speech. If the Court wrongly declines the preliminary injunction, in contrast, Mil Mujeres will suffer harm in the form of defamatory statements on the Rubic website, which harms can be remedied with money damages. The Court finds the potential harm to Defendants constitutes the greater injury, thus weighing against entry of a preliminary injunction. *See Vrasic*, 106 So. 3d at 486 ("[A] temporary injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns.").

## D. Public Interest

Finally, to satisfy Rule 65, Mil Mujeres must show that a preliminary injunction would not be adverse to the public interest. The Court finds Mil Mujeres has not met this burden. The public

interest favors open and free speech, yet another reason the law disfavors prior restraints of speech in defamation cases. As such, this factor weighs against entry of a preliminary injunction.

### III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 18) be **DENIED**.

The parties shall have **ten (10) days from** the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge.[3] Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 31st day of May 2023.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE

---

[3] The undersigned has shortened the time for objections because the of the expedited nature of the relief sought in the Motion.